The case on the calendar for which I will appear is Anchorage School District v. M.G. Case No. 18-35229. Counsel, I'm ready for your argument. Thank you, Your Honor. May it please the Court, my name is Gregory Fisher. I represent the Anchorage School District. With me at counsel table is an associate from my firm, Patrick Callahan. I have brief comments, but before I render those, I wanted to ask the Court if it had any questions for me. How might I best assist the panel in approaching this case? And if the Court had no questions now, I can deliver my comments and make our case quickly. Questions? Thank you. Well, this is an IDEA case, globally. Both the hearing officer and the district court concluded that we failed to timely implement an IEP. We disagree with that conclusion. Leaving that aside, what brings us here today is a stay put appeal. Specifically, the hearing officer's decision that was delivered on May 30, 2017. And how long does that stay in place, counsel? It stays in place until all of the proceedings are concluded, Your Honor. Is that Joshua A.? Yes, Your Honor. Joshua A. is the subject of a circuit split, I think. Well, I... In this circuit, it's Joshua A. that's going to require... That's the answer to my question, in this circuit. Yes. I don't mean... That wasn't intended to be a trick question. No, that's fine, Your Honor. But I am curious to know, I think that the viability of that precedent is not raised in this appeal. You're not questioning that? No, we're not, Your Honor. No. Okay. Thank you. So, our position from the start has been, when we're considering what is the stay put, we look to either an IEP, if an IEP is in place. Here, that's not the case. Or, applying Burlington and the regulation, we look actually to the hearing officer's decision, which was in favor of the parents. And specifically, our position has been, we look to all of the terms, all of the provisions in the hearing officer's decision. If we do that, we reach what we think is a result that's consistent with law, policy, and precedent, and we get to the point of providing this young man a free and appropriate public education. Was there a determination by the hearing officer that the school district is capable of providing a fate here? No, Your Honor. In fact, we had proposed an interim placement at that time that the hearing officer had rejected as being untimely. She did qualify that by observing that, you know, it appears as if, given time, it would work. But we need to give it time and first have this young man at Perkins for a specified period of time. And that's what I think is really unique here, Your Honor, is that you look at the hearing officer's decision, and it wasn't just have him, have this young man at Perkins for a school year. She had a term limited, 269 days, 9 1⁄2 months. Second, she actually qualified and specified that a placement decision would be made no later than February 17, 2018. Yes? Can I interrupt there? Forgive me for interrupting. But that's the whole rub, because the parties didn't come. They didn't develop a phase 2. I think you're arguing that this is a two-phase, a multi-phase. But the hearing officer, I think quite expressly, didn't have a plan for after, I think it's February 18, right? So this would be my... Is that a yes? So then my question is, I think that is uncontested. And then my question is, so what would we, how could we possibly go forward? Yes, Your Honor, thank you. Apply the terms specifically and apply what the hearing officer did, because I think she foreshadowed the potential split or the potential divide with the parties. And that's why she specified that the district would not be responsible for any costs or tuition after February 18, 2018. And she went further than that. She specified... I'm anticipating a question. Oh, sorry. I'm getting used to your rhythm and I thought I was reading a question. Sorry. So she did actually more than just that, though. Not only did she take pains to emphasize that we would not be responsible for any tuition after February 18, 2018, but then she laid out a canvas, if you will, of potential scenarios. What happens if this happens? What happens if this happens? What happens if this happens? And what she noted was, in the event that the parties cannot agree upon a placement decision by February 18, 2018, that the parties would go to mediation, and in the event that they could not resolve a placement decision by that time, then the parents would have their remedy under the law, which is a due process proceeding. And she specifically outlined that. They would have the remedy of a due process proceeding. Now, acting consistent with the hearing officer's decision, what the district did was issue what's called a prior written notice. And we advised the parents that in light of the limited range of evaluations that we were able to complete in January of 2018, the very last week, we had an interim placement in place that we believed, based upon an expert testimony from Jennifer White, would provide this young man with a free and appropriate public education. And the parents did not accept that decision. We had the stay put decided by the district court, and the district court concluded that the young man would stay at Perkins. I think the record is clear here, particularly in light of the supplement that we had filed. We've kind of reached an impasse in terms of trying to bring this to the IEP table. We got a taste of that a little bit, I think, in October of 2017, when on the brink of the scheduled evaluations, Perkins, Perkins School for the Blind, denied us access to their campus for purposes of completing the evaluations and observations that were planned at that time. Jumping forward to March of 2018, Perkins took the position that they basically disclaimed any responsibility under the hearing officer's decision, essentially saying, hey, look, that all ended on February 18th. And in terms of cooperating from here on out, if we decide based upon our own discretion, we will, but otherwise, you're kind of on your own. That's not the status quo, right? We entered an order July 11th, taking judicial notice of the district court, and the district court's well aware of this problem, of the allegations that there's been a failure to cooperate and of the huge financial consequences. And she signaled, I think as clearly as she can signal, that the parents need to cooperate, including intervening with Perkins to make sure that there is a constructive dialogue. I think to the point of saying, and if there isn't, if the court determines that there's been a failure to cooperate, then the school district may not need to pay for that, right? So it seems to me that the district court's very well aware of that problem. Yes, the district court issued that order on June 15th, I believe, Your Honor. Status quo, I agree. The status quo, the terms in the decision, and the term in particular that I'm identifying is the term that would ensure that we are not responsible for paying any tuition or any costs after February 18th, 2018. As the district court, forgive me for interrupting again, but for that period of time, after February 18th, has the district court made a determination about whether there was a failure to cooperate? No, we just filed, in fact, motion papers last week. We've spent months now working. I don't want to point fingers. Mr. Regan can... My question really is, has that been resolved one way or another? No, Your Honor, it has not. Are you asking us to make that finding a fact, surely? No, it has not yet. Okay, so why wouldn't we leave that alone and let that be resolved in the district court? I think I have two answers for that, Your Honor. One is that the simplest and the best answer here is to go back and correct the mistake that was made and apply the terms as they were written. And if you do that, I predict this entire dispute will dissipate rather quickly because right now neither the parents nor Perkins, and again, I'm not pointing fingers, but right now they don't feel any particular compunction to move this ball forward. And why should they? Well, the why should they, even after the district court's order, frankly, my initial concern when I looked at this case was, of course, the human tragedy, the enormous expense, and why would the parents have an incentive, frankly, to come to the table? And I think the answer is the mid-June order where the district court said if there's a failure to cooperate, it may not be an expense borne by the school district. So I just want to be blunt in my typical fashion and give you a fair opportunity to respond to that. And here's why I think, here's the only issue or the problem that I see with that is two-part, Your Honor. One is that we've kind of converted an Article III court to an administrative law judge. All of these issues that we're now looking at in terms of deciding are we or are we not understanding what information is supposed to be received, are we or are we not, to the IEP stage, for example, would ordinarily be handled in an administrative hearing with an administrative law judge. So that's part one of the answer. The second part, though, pertains also to the cost that you just identified. Those are very real costs for us, Your Honor. It's $1,400 a day. The record is clear. We're not flush. We do the best we can do. We're no different than any other school district in Alaska. So it's a significant burden that we're facing, and who knows how long the district court will take to identify and resolve and untangle the issues that are now percolating before. Counsel, in addition to that, though, I want to go back to Judge Christian's first question. It seems to me really what you're fighting against is Joshua A. Because Joshua A. is the case that says that this has to continue until the appeals are over. Now, you say you're not contesting Joshua A. Their briefs rely heavily on Joshua A. Your briefs did not cite Joshua A. So I wanted to give you an opportunity to tell me, you say you're not contesting Joshua A. And obviously this three-judge panel, we're locked in with Joshua A. But in light of Joshua A., what really is your argument as to why we would have the authority to terminate these payments now? The hearing officer's decision. And specifically, if you look at Clovis, Clovis hinged its reasoning, Judge Owens, on Burlington. And Burlington very clearly drew the analogy between a hearing officer's decision in favor of the parents and an agreement of the parties. And so that, of course, then says, all right, fine. What are the terms and provisions of the hearing officer's decision? So right there, to get to Judge Owens' point, we'd have to decide that the hearing officer's decision was a multi-phase educational placement. I don't think so. I think the only thing you would have to decide is what is the black and white language in the hearing officer's decision. It doesn't give us a phase two. That's the problem. It doesn't give us a phase two. It recognized what was going to happen until February 18th, and then it recognized there wasn't a plan. It was a go mediate, go work this out. And what it did say, I'm keeping an eye on my clock here because I would like to maybe keep a little bit of time for rebuttal or additional comments. But what the hearing officer's decision very clearly did say is if the parties cannot agree on a placement, then we go to mediation. And if we can't go to mediation, the parents have a due process rights. And so, and I misspoke there a minute ago where you asked about it segmented or I meant to say yes. I do think when you read the actual terms in the hearing officer's decision, particularly the fact that it was term limited and the fact that she clearly specified we would not be responsible for any payment after February 18th, and when you also consider in the record the fact that we had provided a prior written notice with an interim placement. So we had said we've got this. We have it now. It's available. It's based upon the limited evaluations that we conducted in January, and it will provide a free and appropriate public education. It would bring this young man who's 4,500 miles away from home in an institution that we're fighting with just to get the information that we think we need. It's beyond frustrating, Your Honor, particularly when we're footing the bill at $1,400 a day. And so that's why we would ask the court respectfully, please, if you apply those terms, if you apply the black and white terms of the hearing officer's decision, and that's the status quo we maintain, that will bring this dispute to a rapid close, I believe. I've got 48 seconds. I'd like to reserve the balance of the time. Thank you, Your Honor. I was trying to get you to do just that. So why don't you be seated, and we'll put a minute back on the clock when you come back up. May it please the court. I'm Mark Regan. I represent the student, M.G., and his parents, Betsy and Brian G., in this appeal. The question under the statute is, what is a student's current educational placement? The point of statehood is to protect a placement that's been found to be appropriate and to keep a child from having to bounce around. That's what we're here to protect today. In terms of the regulation, 34 CFR 500-518D, the question is whether a due process hearing officer has agreed with the parents, agreed with the child's parents, that a change in placement is appropriate. And if that's true, the placement is treated as an agreement for purposes of statehood. Now, if I could ask you to look at the text of the regulation, the presentation that Mr. Fisher has made says it's the order in all of its 14 pages and 4 pages of appendix that is what is to be considered an agreement of the parties and applied. That's not actually what the regulation says. What the regulation says is if the hearing officer agrees with the child's parents about a placement, here the hearing officer agreed with the child's parents about a placement at Perkins School. That is what is statehood, not the rest of the order. So there's a very basic difference in the way we have presented this and the way they have presented this in terms of what the regulations require. There should be no question that the hearing officer approved this placement. In fact, as the hearing officer said... But not forever. It says until February 18th. That is the crux of the difficulty in interpreting that order, and it is enormously expensive. So we don't make light of that, of course, and I don't mean to imply that you are, but it is a conundrum. The district court is clearly concerned about the allegations of failure to cooperate. Counsel? If I could respond to that. Please. The evaluations that were to take place at Perkins School have taken place. They took place in January. We do not think that the parents are responsible for the delays getting to that point. In fact, as we tried to point out in our brief, the school district took the parents to due process about evaluations twice, once in August of last year, once in the fall, and each time the parents prevailed on the grounds that it was not appropriate to demand of them that they conduct the evaluations, that they had not been alleged to be responsible for the delay. So we won that twice. The evaluations have taken place. We don't think we're responsible for the delay up until January, and we don't think we're responsible for the delay between January and now. We haven't seen the evaluation results. The school district has been intent on arguing to whoever it can that the parents in Perkins School are responsible for the delays. The district court is concerned about that. The district court set up a way to deal with it. This is a statehood appeal, and statehood is supposed to stop a student from bouncing around. Once the student is in an appropriate placement, which Perkins is, the student should stay there while the disputes about the hearing officer's decision are being resolved. That's what the district court is preparing to do. Mr. Fisher is correct. There's motion practice. We're responding to it next week. We'll see what the district court wants to do. For purposes of what you all are doing as an appellate court, the questions really do come back down to what Clovis says and what the regulation says and what the hearing officer's order does not do. It does not establish a two-phase placement where the second phase is something that happens in Anchorage or anywhere else. It doesn't establish the mediation remedy that Mr. Fisher was talking about. That mediation remedy is for a different situation. It's in the hearing officer's appendix. What it covers is if Perkins School goes out of business or if the student is no longer able to attend Perkins School, then it sets up a search for another school. That search for another school, if there's not agreement on that, then we go to mediation, then we maybe go to due process. But that is not the situation here. It's not a matter of mediation and due process. It's a matter of following the hearing officer's order, which the district court, as I think you noted, has instructed us to do. What we will be doing is participating in the evaluation summary meetings, participating in the IEP development. If there is a failure by the IEP team to agree on something, then we will be proceeding further. But right now what's going on is we are awaiting that process and the purpose of statehood is to preserve the status quo, which is Perkins School, while this goes on. To the extent that the school district is arguing that there is no order in effect, nothing to do, once you get to mid-February, it's all over. There's no protection from the hearing officer's order. Things ought to go back to the school district. In fact, in one of their briefs they say the hearing officer's order gives controlling discretion to the school district to decide what happens next. That takes from the IEP team its job of deciding what an appropriate placement is for this student. What the IEP team is supposed to do under the hearing officer's order is amass evaluations, work through what they mean, decide if anything else is necessary, and try to make a decision. Under the hearing officer's order, she tried to condition a little bit what the IEP team was going to do by focusing its attention on whether this student had gotten the benefit that he was supposed to get from Perkins School. So it's not as if the hearing officer ordered that the student would come back to Anchorage and be in an Anchorage school district placement starting in mid-February or starting in March. That's not what the order says, and that's not what the order fairly read means. What instead the hearing officer said is there is no magic number about how long this student needs to stay at this particular school. The hearing officer clearly contemplated that one of the things the IEP team might do would be to decide that he ought to stay there for a much longer period than the period spelled out in her order. Where do you see that in the order? It's where the order says the IEP team meets. If there is disagreement about further placement at Perkins School or another further placement, the parents have their remedies under the IDEA. We have always contended that what that means is stay put, that we could ask, as we ask the district court, to preserve the status quo while the dispute is going on. Now, it's a little bit unusual here because what got the district court into the stay put area was the fact that it was considering an appeal from the hearing officer's decision. As Joshua A. says, the dispute over whether the hearing officer got it right is a continuing one. It is a continuing one through the district court's merits decision in June, and it is a continuing one, we think, until the school district's recently filed appeal to you is resolved. So under Joshua A., stay put stays that way. And the hearing officer did not attempt to foreclose, continued placement, not payment, payment two, did not attempt to foreclose continued placement at Perkins School. In fact, the reference to the parents having their remedies under the IDEA, if the IEP team doesn't agree on how long he needs to stay at Perkins School, that is an invitation to go through the stay put remedies if we get into this position, which we are now in. So I'd be glad to entertain other questions about this, but... I don't think that we have any. Thank you. Madam Clerk, could you put a minute on the clock? Thank you. Thank you, Your Honor. Well, briefly, we all agree that the hearing officer's decision is the core document. Where I part from Mr. Regan is the concept of placement. I read any and indeed most cases to suggest that it's a much more nuanced concept. It's not just the physical location. You look at the educational program. And granted, that requires maybe ferreting out exactly, okay, what information is being conveyed here. As I read the hearing officer's decision, those black and white terms, it seems abundantly clear that our obligation to fund tuition stops on February 18th and that after that we have normal processes kick in, which would include our prior written notice. If the parents are not happy with that, they have the due process remedy that the hearing officer expressly referenced in the decision. And that would be, if we're paid, I'm sorry, Your Honor? I was telling Judge Christian before she says time to go, I did have one question for you. Under your view of this case, if the hearing officer had said, look, I know what the Ninth Circuit said in Joshua A., but I'm saying that this is going to end when the district court decision is done. Forget the Ninth Circuit. Would we be bound by what the hearing officer said or would Joshua A. still require this to continue through to the end of the appeal? Legal conclusion, my interpretation of that would be no, Judge Owens, that the hearing officer wouldn't, in no different way than this panel, could not overturn Joshua A. I don't believe a hearing officer could. But I distinguish that inquiry from the inquiry we're discussing, which is what are the actual terms. And I would ask the panel to conclude, I would ask the panel, please look at the actual terms. That's what the stay put is. Not applying those actual terms is not preserving the status quo. It's turning it upside down. We've got this young man 4,500 miles away roughly in Massachusetts in an institution that the record is clear has already disclaimed any obligation to comply with the order. We've got to go to an Article III judge to try to fight this out. That's no way for us to be proceeding when we're about providing a free and appropriate public education. If you apply those terms, this dispute will come to a conclusion immediately. Thank the panel for its time. Thank you all for your helpful argument. We'll stand and recess.
judges: Hawkins, Christen, Owens